Mr. Biss, whenever you're ready. Yes, sir. Good morning, Your Honor. May it please the Court, my name is Steve Biss. I represent Congressman Devin Nunes and Mr. Steele. The Court has received extensive briefing. I'm going to focus today, in the time that I have, on two issues. Number one is New York is the law of the place of the wrong. In this case, the Court is engaging in what I'll call a predictive appeal. The Court is being called upon to predict what the Virginia Supreme Court would do in this case. And I would submit to you that, unequivocally, the Virginia Supreme Court would apply the law of New York as the place of the wrong for two reasons, two principal reasons in this case. Number one, following a long line of decisions from Virginia courts, the Virginia courts have found that the law of the place of first publication is the most uniform and reliable predictive event in terms of determining what the law of the place of the wrong is. We cite all those cases on page 29. Do we know that the publication happened in New York? So I know that Chris Cuomo broadcasts from New York and the reporter Vicki Ward is based in New York. But is it possible that the actual place where they upload articles to the website is Atlanta or some other place? Do we know from the record exactly where it happened? Judge, I think the record clearly—and I'll see if my colleague agrees with me. I think the record clearly demonstrates that the online article was uploaded in New York. It was authored by New Yorkers, uploaded in New York to the website, the digital property in New York. The broadcast was made from facilities in New York. Chris Cuomo is, of course, a New York resident, and he appeared with the New York author at the CNN studios in New York to broadcast. The third form of publication, of course, as we allege, is social media blitzkrieg, which occurred from all of CNN's social media properties, which are controlled in New York. The place of first publication— Isn't that just a subsequent publication of the same thing? Judge, it clearly is a republication. There's no question it's a republication, but the point being that it occurred— So if we had a case where, say, the broadcast came from New York, but the article was published out of Atlanta, would that be a different case? Possibly, and let me say why, because you sort of invoke the Gilmore—what I'll call the Gilmore situation. And in Gilmore, of course, the Western District of Virginia was faced with a situation where there were, I believe, six defendants. Don't hold me to that. Right, there were lots of defendants, and there were lots of different places. Right. So it's hard to determine. Yes, sir. Alex Jones was not only in Texas, where he wrote some online articles, but InfoWars was published out of D.C. And then you had multiple individual defendants in other jurisdictions. That, Your Honor, is a multi-state, multi-defendant case where the Gilmore court applied the law of the place of domicile or the place of principal injury. And in the Western District case in Gilmore, the plaintiff was a Virginia resident. He lived in Virginia. He was a State Department official who worked in Virginia. And so in that situation, where you have a multi-defendant, multi-state publication, true multi-state publication— Right, but my hypothetical was you'd have one defendant, but the publications occurred in two different places. Judge, I still think what you do— We'd have to puzzle through that. That would be— Yes, sir. I think Virginia— But you're just saying that's not presented in this case. I don't think that's presented in this case at all. I think it's solely New York. I don't think there's any evidence on the record— Did you comment that actually the initial publication was the CNN.com article and the broadcast, which was discussing that article, follows on from that, and so the key event is the article? Is that possible? CNN, the article comes first. There's no question. The article comes first in time, approximately 9 o'clock, just before they go on Chris Cuomo. So the article comes first. The broadcast comes second. And I cannot tell the court to a reasonable degree of certainty without evidence when the social media broadcasts come. In our amended complaint, of course, we do include snapshots or screenshots of the social media postings, so the time stamps are there, but I don't know that that's a—without evidence, I don't know if that's a reliable indication. The first publication occurred in New York. Virginia courts say that's what you look at, the first publication. The second point I want to make— I'm sorry, counsel. Can I just stop you on that point? Yes, sir. You keep saying Virginia courts say that. Are you talking about the Federal courts in Virginia that you're citing? Judge, I cited every case I could find. No, no. Are those the cases that you're referencing? Yes, sir. So I just want to be careful because normally when we're talking about choice of law and we're looking at the law of the forum, we're looking at the State courts, right? So if the Virginia Supreme Court had spoken clearly to this, we would follow what the Virginia Supreme Court said, right? That's correct. So just to be clear, you're talking about what Federal courts—one would hope if they're in Virginia, they might be more familiar with Virginia law than we are. So, you know, we would have a tendency to look to them for persuasive authority. But what do you have from Virginia State courts that really guide us on that? I mean, I know McMillan says we don't do the restatement second. But what guidance do we have or what are the limits of the guidance that we have from Virginia State courts, particularly the Virginia Supreme Court? So, Your Honor, what I would commend to you is the only case I believe—and I've done exhaustive research on this, as your Honors have probably done as well—is the Depp case. Johnny Depp and his former wife got into a massive fight. She published some statements over the Washington Post servers, which are located in Virginia. Well, the Johnny Depp case is Fairfax County, right? It's a lower state court. But you're right. So the Johnny Depp case says we're going to apply the law of the last place that completed the tort. And that's the way we think the Virginia Supreme Court would decide it. So what we know about the Virginia Supreme Court, though, is it applies the law of the place of the wrongful act irrespective of where the effects are felt. And so everybody's trying to extrapolate from that principle. That's correct, Your Honor. I was asked whether there were any Virginia State court cases. That's the only— There's no Virginia Supreme Court case, which is why we asked the court to certify to the Virginia Supreme Court. We think that's the best— —possible places where the publication occurred, right? But there are Virginia Supreme Court cases that say this general principle, the law of the place of the wrong— Absolutely. —irrespective of where the effects are felt, is the principle the Virginia Supreme Court follows. Absolutely, Your Honor. And that's the second point I wanted to raise, is the Virginia Supreme Court itself has been unequivocal for as many years as it's decided these issues in rejecting the most significant relationship test. The Jones-McMillan cases are the ones that are directly on point in tort cases. There's no reason for this Court to believe that the Virginia Supreme Court would magically accept the most significant relationship test in the context of a defamation case. Well, is that really the argument of the other side? Because I would think the most significant relationship looks at all the elements of a tort, right? It looks at everything and asks what each component's relationship is to the particular forum or the particular state whose law you're thinking you might apply. Is that really the same if you take the position—and I'm not saying you do—that the lex loci delicti focuses on the complete tort, which would require publication and somebody looking at it, right? Somebody seeing it. So you have the damage to reputation. And now all of a sudden you're looking at where's the location of that. Well, if that occurs in multiple jurisdictions and you've got to pick one, are you looking for the most serious injury? So is that perhaps distinct because you're only looking at weighing where the most injury is, right? You're only looking at that final element. Where is the delicti most happening as opposed to looking at all the elements of the tort where someone may have run around and committed certain predicate elements of the tort in various forum? My point is, isn't that a little different? You may not think that's still how you do it, but isn't that a different analysis? Well, again, Judge, I think that in terms of predicting what the Virginia Supreme Court would do in a unique situation like this that it's never ruled on before—and I see I'm out of time. May I finish responding, please? I would submit to Your Honor that what you have to do is you have to look at the most closely analogous decisions from the Virginia Supreme Court in tort cases. And I would submit that those decisions are Jones and McMillan on the choice of law issues and, in the defamation context, the Virginia court's rulings on the place of first publication. I think that gives the court the most— I would say also that the Virginia Supreme Court doesn't seem to be focused on where people are reading the material, right? The idea of the place of publication is about where it was published. And then when the Supreme Court says wherever the effects are felt, it seems to suggest that they're not inclined to focus on where people are reading the publication. Is that right? I agree with that. I think the Virginia Supreme Court would focus on a conduct-regulating scheme, and that is the defendant, in this case CNN, headquartered in New York. New York has the greatest interest in regulating the conduct of defamation— Well, California has a pretty strong interest, too, if one of its citizens is defamed, right, and suffers injury. It does. But, Judge, like Keaton, like the Keaton case, the Supreme Court of the United States said very clearly that New Hampshire has— in regulating the conduct of an out-of-state publisher, in that case Hustler Magazine, who published in-state. So my time's up. I won't wave it around. Well, actually, I'm going to squeeze in with the indulgence of the presider one more question. You suggest that it might be appropriate for us to certify a question to the Virginia Supreme Court. If we were to do that, in your view, what would we certify? Tell me the question, because we have to be specific if we were to do that. What would you have us certify? How would you phrase that? Well, again, I think I put it in the brief, but I think if I could say this. In a multi—in a—and this is following up on a couple of questions that Your Honor asked me as well. In a multi-state defamation case where the defamation is first published in New York and later disseminated worldwide, would the Virginia Supreme Court determine the place of the wrong to be the place of the first publication, or would the Virginia Supreme Court apply Section 150 of the Restatement, the most significant relationship test, to determine what the place of the wrong is? And then even if that second question would be, even if the Virginia Supreme Court would determine that the place of the wrong was California, then the question becomes what is the—what the substantive law of California would apply. What is the primary—what's the place of the primary injury, the brunt of the injury? And, of course, we've—we say District of Columbia is the place of primary injury. Either way, California law doesn't apply. New York or District of Columbia law applies. And the case should go back and be heard on its merits. Thank you. Thank you, Mr. Fusasi. We reserve the minute for rebuttal. Mr. Fusasi. May it please the Court. The district court correctly applied California law to this claim brought by a California congressman, a citizen of California, according to his own amended complaint, who was born and raised in California and who represents Californians in Congress. Representative Nunes does not contest that he failed to request a retraction, and he does not contest that his amended complaint failed to plead adequately special damages. I'm not sure it matters that he's a California citizen. I mean, you don't dispute that the general principle from the Virginia Supreme Court is that they look to the law of the place of the wrongful act irrespective of where the effects are felt, right? Well, I think it—I'll answer your question. I think it does matter centrally that he's a citizen of California based on the test that— Okay, fine. Once we get to that test, maybe it matters. But—so you don't dispute that the general principle that Virginia would apply is the law of the place of the wrong irrespective of where the effects are felt. Now, there's a problem whether that test applies in this kind of a circumstance. But let's make it simpler. So if Congressman Nunes were defamed by the Albany Times Union, which is clearly published in Albany, there's no question the Virginia Supreme Court would apply the law of New York, right? Because published in New York, the law of New York would apply, right? Well, I don't know precisely how it would apply in that case, but let me tell you this to answer your question. What court after court in Virginia—applying Virginia law has held, and what the First Restatement itself reflects, is that the tort of defamation is not completed. Publication does not take place until the allegedly defamatory statement is actually seen or heard by a third party. So under—you know, the courts applying Virginia law, under the First Restatement itself, it's not the place where an article is written or an article is prepared or where it's published. And so the point of my hypothetical was to—because I'm picking a local newspaper— was to make clear that the readers who are going to be reading it and the place where the newspapers just come off the press is Albany, right? So in that kind of a hypothetical where it's clear that everything related to publication happened in Albany, Virginia would apply the New York law, right? So our problem is that there's a national broadcast, and maybe that makes things different, but I just want to start with that hypothetical. Sure. I think I'm following what you're saying. In fact, what you're saying is that in your hypothetical, the article is seen and heard in one state, which is New York. Right. So it wouldn't present that question. Right. So that's the general principle that Virginia is applying, and we have to predict what they would do in a case where there's a national broadcast. That's correct. And what court— Now, if Virginia has said that they want for clarity and expectation to focus on the place of publication and not where the effects are felt, if in this case I grant that, you know, CNN is broadcasting nationally, but if we have a situation where we even transferred venue to New York on your motion that said that all of the relevant events—activities by CNN occurred in New York, the article was written, the broadcast happened, then if we're analogizing to that general principle, why isn't the closest analogy to say, well, if everything the defendant did was in New York that led to publication, that's going to be the law that Virginia would apply? Well, let me answer a couple of points on that question. First, we transferred—or we moved to transfer venue under the transfer standard, which implies, you know, convenience of the parties and— I'm not saying that that controls, but I think you acknowledge that the relevant events and the relevant witnesses and everything CNN did happened in New York. No, no. I was going to say, Your Honor, I don't acknowledge that. Okay. So why not? I don't. We certainly pointed out that CNN has a significant presence in New York. The senior writer on the article was based in New York. The Cuomo telecast in the studio was in New York. But there is nothing in the record, there is not a single allegation in the complaint about, for example, where this article was uploaded to the Internet. And that, to me—sitting here today, I couldn't tell you precisely where the computer servers were located. I mean, that is a highly technical analysis. It's highly idiosyncratic. It could lead to a law of the state that has nothing to do with, you know, any of the parties at issue here. Well, can I put it this way? So the reason why the Virginia Supreme Court has rejected the most significant relationship test is because they think that they shouldn't have to engage in all of this balancing about what state has the most interest. They want the clearest rule possible. And so wouldn't the clearest rule possible be, well, where the key events that constituted the tort occur? Even if we can't—even if there isn't, you know, there might be a server somewhere else. But it's pretty clear that the key activities that CNN did were in New York. Why isn't that the closest analogy to what Virginia generally applies as versus talking about, well, there was a harm in California because he's elected there. There was a harm in Washington because he is involved in votes and politics in Congress, and we have to balance the different harms. That seems like the kind of thing that Virginia says it doesn't want to engage in, whereas the first thing about where the publication took place, it seems closer to, you know, basing it on the key events of the defendant. I don't think so, Your Honor, for a number of reasons. I think that the test has been set forward by, you know, the vast majority of the courts, and Judge McMahon has noted they've shown a remarkable consistency in what they have done, and that is presumptively applying the law of the state of plaintiff's domicile, the place where the plaintiff suffered his greatest injury in one of these multi-jurisdiction court cases, is a far simpler test. It's a test that can be applied very much at, for example, the motion to dismiss stage, where, you know, you have a presumption that it's going to be the law of the state of the plaintiff. If the plaintiff wants to bring forward allegations, which this plaintiff has not done. But is it simpler? I mean, I know that you say that it should be the place of domicile, but so let's say the facts here were even clearer, that Congressman Nunes was up for a cabinet post in Washington, and then the president said, oh, but after I read the CNN article, I over, I picked somebody else because I just couldn't deal with somebody who was implicated in the conduct alleged in the CNN article. It would be pretty clear that the most, the biggest impact of the article was then in Washington, right? Well, I think in that hypothetical, that may well lead to that result. Right, so it's actually not pretty clear that you just look directly to the place of domicile. You have to do this balancing as to whether the effects were significant in Washington. So like, so in this case, right, these allegations about the Russia investigation seem really relevant to Congressman Nunes' role on the Intelligence Committee and his positions in that investigation and their allegations that are being used against him. It doesn't seem necessarily as relevant to the election that occurred later in California. And so you're saying that judges are supposed to work through that when the Virginia Supreme Court has said we don't want to engage in that kind of analysis. We just want the clearest rule about where the tort took place. Well, I think what the Virginia Supreme, what the Virginia court is certainly about is that publication, like I said, takes place where the article is seen and heard. I'm sorry, with the mask, it gets a little hard to hear. You said, I heard the Virginia courts have held, and then I couldn't hear anymore. Sorry. That publication takes place where the article was seen and heard. And that's, you know, we cite a number of cases, I think both parties cite a number of cases along those lines. The first restatement itself in the choice of law context, section 377, says the same thing. It focuses on where the plaintiff suffered an injury. Virginia cases, I know there's language about regardless of where the effects take place, but they focus, both the Milton case, the Quillen case that we cite, all focus on where the plaintiff suffered an injury. So the test that is, that we advocate for, that the district court applied here, that the vast majority of courts have applied, is completely in line, I think, with exactly what Virginia applies in its general choice of law analysis. And I think it is a far simpler test than an ambiguous question of what, you know, where was the article published? Because as the Gilmore court points out, what does that mean? Does that mean where the writer happened to be located, where they, you know, hit the last period at the end of the article, even if maybe they're, I don't know, transferring flights at O'Hare Airport? Well, either way we're doing something imperfect, right? Either way we're trying to figure out where the greatest impact was felt or we're trying to figure out where the last event that amounted to publication occurred. And I understand that neither one of them is ideal, but I'm just, the question is which one is better. So why don't we talk about how we would apply the case here? So if I have this allegation that Congressman Nunes was defamed by the CNN article about this Vienna meeting and it played a really strong role in the debates that are happening in Washington about, you know, the impeachment investigation and whether Congressman Nunes has standing to object to what's going on, whether he has credibility and so on. Doesn't that seem like a significant injury that happened in Washington, D.C.? And if I think it played much less of a role in his election in California, does that mean we should conclude that it's Washington, D.C. as opposed to California? I don't think so, Your Honor. I don't think the test is just whether it played a role in his election or not. Isn't that the reason the district court gave? It said that he's from California. He's elected by the voters of California. And so that's where he would suffer the greatest injury from defamation, right? Isn't that the reasoning? And you acknowledged a moment ago that if the facts were that he was denied a cabinet post in Washington because of the article, then clearly the greater injury would be in Washington. So it seems like a much more complicated analysis than you were suggesting. I don't think so, Your Honor. I think for all the reasons we've talked about, it would depend obviously on what the factual allegations actually are in the complaint. And here there are no factual allegations that point to specific injury in Washington, D.C. The allegations in the complaint are related to his important ties to the state of California, which one would expect. He's a congressman from California. And so, you know, whether hypothetically he could have pleaded allegations in the complaint, after all, is in the control of the plaintiff. Okay, that's fair. So then we can talk about what is actually pleaded in the complaint.  But you also see that if he had – I mean if you had a case where there were these allegations about what happened in Washington, it would be a complicated sort of balancing. We had to determine where the greater injury was, right? Well, I'm not sure it would necessarily be complicated, but I understand one would have to approach that question. And Judge Nichols did in the Washington Post. As opposed to playing a strong role in his election in California. Right. So that could have been – that could be the fact pattern here. And so you're saying that the complaint doesn't adequately allege that, but it could be. Right. I mean I think Judge Nichols' complaint is perhaps instructive in terms of the type of questions you're asking, Your Honor, because Judge Nichols' complaint adopts – expressly echoes the reasoning of the district court here in terms of what test to apply. Adopts the reasoning, the test that is the prevailing test applied by the vast majority, of course, that have considered this exact question under the Lex Loki standard. But, you know, in Virginia, applying Virginia law and applying the same Lex Loki test around the country. He then specifically distinguished this case and found that in that case, Congressman Nunes had alleged sufficient allegations to overcome the presumption that the law of the state of the domicile would apply. And so I think that's just an illustration of how, you know, how this would play out. I think in terms of the Virginia Supreme Court's articulated interest in uniformity, predictability, ease of application, and clearly that is what the Virginia Supreme Court has held to be the purpose or animating purposes behind the Lex Loki rule. This is a straightforward test. It's the test that has been adopted by, you know, the vast majority of courts that have considered this question. It's a test that can be applied at the motion-to-dismiss stage. If what we're getting into are factors like, you know, where an article was uploaded to the Internet, the location of the last server, you know, or looking at, you know, any number of people who touched an article, be it an editor, being it a producer, being it a reporter, and where they were located. I mean, that is far more complicated, far more idiosyncratic, applies, frankly, far more balancing and far less clarity than a test that has effectively a default, which is, law the place of domicile. It's the plaintiff's obligation, plaintiff's opportunity to plead facts that move essentially the state outside of the domicile. It's fair to both parties. And I think that is why courts across the country confronting this exact problem under the Lex Loki test have, with significant uniformity, done exactly what the district court here did, which Ed Nichols did in his case and the other cases we've cited. I see I'm out of time, and I'm happy to answer any other questions. Thank you, counsel. Thank you. Mr. Biss, do you have a minute remaining? I don't expect to take a minute here. I just wanted to follow up on a couple of points here. This publication by CNN was designed to injure Congressman Nunes in the District of Columbia. When you look at the article itself, alleged complaint, the first thing you see is his picture. It's not a picture of him in California harvesting some avocados or something. It's a picture of him during the impeachment proceedings in D.C. while he's sitting there during the impeachment proceedings. The article alleges misconduct, unethical behavior on his part as a congressman in D.C. For instance, it alleges that he and his – one of his staff members, Colonel Derek Harvey, almost defrauded Congress by misrepresenting their – So you're saying we can infer from the complaint that the greatest injury was with respect to his activities in D.C.? Like, what is the injury? That his credibility as he's dealing with the issues related to the investigation? Yes, sir. I mean, it really is the unethical behavior is the – relates to his actions as a congressman in D.C. There's no question that the article was – But if you have allegations of unethical behavior, wouldn't that be an issue in your election too? I mean, yes, indirectly, but the direct problem is you have to deal with the House ethics rules. You have to deal with all of the issues in the District of Columbia, not in California. Your constituents may or may not ever hear about the impeachment proceedings. They may not be interested in it. CNN was interested in it, and they were interested in impairing his reputation. You're saying that the complaint suggests that the information was designed to harm him in Washington, but are there allegations in the complaint that suggest that that's where the greater injury was filled? Judge, there are allegations which, except it is true and the inferences drawn from those allegations, are that the injury occurred in the District of Columbia where he engages in his oversight committee, oversight responsibilities, and where he was acting in connection with the impeachment proceedings. So, counsel, what was the function of all that language in the complaint about California? Was that just surplusage? All that went on and on and on and on about the background of the congressman in California. Are you saying that that was just surplusage? It had nothing to do with anything? No. I'm just curious why you put it in. No, we put it in the complaint because, obviously, if you don't report that he lives in California, if you don't report that he grew up in California, then CNN is going to highlight all that and they're going to say that perhaps we're concealing the California connections. You're concealing that he grew up in – why does growing up in California matter? I don't think it matters. I really don't. Then why would they allege – I guess I don't understand that point. Why would they allege that you're concealing that he grew up in California if that's irrelevant to the case? I think the allegations in that one paragraph are designed to present some background to the reader. I think that that's what that allegation is designed to do. So that was basically surplusage except for the allegation that he's, I guess, established diversity? Well – I guess I'm not really sure what the function is. Judge, I'll say it this way, and I know I'm out of time. I would beg the Court's indulgence just to allow me to respond to this. Not only do we have to allege diversity jurisdictions, so we have to establish he's in California and they're not in California, but in any complaint, I would respectfully submit to Your Honor, in any complaint, you have to give a little bit of background on your client's accomplishments, on his views, to establish the nature of his good reputation. Okay, I think we have that argument. Can I just ask one small question before you're done, which is the opposing counsel said we don't know from the complaint where the actual publication took place because even though the writer was in New York, maybe it was sent to an editor and uploaded from Chicago or Topeka. Do we know where the actual publication took place? Judge, I would submit to Your Honor that the allegations established conclusively that the actual publication, first publication, occurred in New York, they made, on the motion to transfer, they made a big deal about the fact that this was a New York case and it needed to be transferred here to New York because everybody was from New York. Everything that occurred was in New York. Of course, all of the allegations in the complaint say basically the same thing. I mean, I think the court can take judicial notice of the fact that CNN has headquarters in New York and various other New York connections. Viewing the allegations in the light most favorable to the plaintiff on a 12B6 motion and without any other evidence whatsoever from the defendant. Remember, the defendant, CNN, had an opportunity to tell the district court, wait a second, our servers are located in Atlanta. Our servers are located in wherever they claim they are. They had an opportunity to do that, and they didn't do that. So what the readers left with is a motion to transfer that says nothing but New York. In fact, I mean, I don't want to sound flippant, but it was almost as if they were saying, I love New York. That's what they were saying, and they wanted this case transferred to New York for a reason. They didn't want it in Virginia. I'm sorry. How is the motion to transfer relevant to the choice of law question? Well, I just think it Aren't we dealing with 12B6? We are dealing with 12. So are we limited or are we not limited to the allegations in the complaint? I mean, I get there are some exceptions, like if we're dealing with 12B1 subject matter jurisdiction, we'd have affidavits that we could consider. So just maybe you could clarify for me. I'm not sure. What are the materials to which the court is limited in adjudicating the 12B6 motion? Judge, I think your point is well taken that you are bound by the four corners of the complaint. So all this discussion, the motion to transfer, is not relevant to our decision? I think it is relevant. How is it relevant? Because I think that CNN interjected these facts into the record. How is that? I mean, if they had filed an answer with information, do we now consider information put in the answer in adjudicating a 12B6? I'm just trying to understand. What is your argument for why we're looking beyond the complaint here? I don't understand the idea of injecting facts into the record. That's not a concept I'm familiar with in 12B6. My argument is that the motion to transfer, the transfer affidavits, all of the pleadings that CNN filed, all the representations that it made to the courts are part of the record in this case that the court should have. You're not saying that we should decide the choice of law question based on the motion to transfer, but the motion to transfer sort of confirms the intuition that was at the courts in New York. But we're not supposed to be confirming our intuition, right? We're not supposed to be confirming our intuition by looking outside the complaint, right? That would be going to summary judgment, and then we'd have a whole other set of procedures, right, if we were going to summary judgment. We don't go kind of halfway to summary judgment, right? No, sir. We don't at all. And all I'm saying is that the motion to transfer confirms the New York-centric nature of this case. That's all I'm saying is that it confirms that this is a New York law, the law of the place of the wrong. And that's all I'm saying. I'm not saying that the motion to transfer ought to be something that the court relies upon above everything else, but it confirms it. It's CNN's own view. And I suppose also to the extent that the district court was saying that a reason why the court would apply the place of greatest harm rule is because it's not administrable to determine where the place of publication was. The fact that the court could determine that all of the relevant activities of the defendant took place in New York is a suggestion that maybe it is administrable, right? Yes. Okay. Thank you, counsel. We'll take the case under advisement. Thank you. The next case.